```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW MEXICO
                        ALBUQUERQUE DIVISION



UNITED STATES OF AMERICA,     )   CASE NO: 1:18-CR-03475-WJ
                              )
              Plaintiff,      )        CRIMINAL
                              )
    vs.                       )     Albuquerque, New Mexico
                              )
ROBERT DUNSWORTH,             )     Tuesday, January 8, 2019
                              )
              Defendant.      )     (9:37 a.m. to 9:46 a.m.)


                    ARRAIGNMENT / DETENTION HEARING

              BEFORE THE HONORABLE KAREN B. MOLZEN,
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:            ROBERT DUNSWORTH, ESQ.
                          U.S. Attorney's Office
                          District of New Mexico
                          P.O. Box 607
                          Albuquerque, NM 87103

For Defendant:            IRMA RIVAS, ESQ.
                          Federal Public Defender's Office
                          111 Lomas Blvd. NW, Suite 501
                          Albuquerque, NM 87102

U.S. Pretrial/Probation:  C. Duarte

Court Reporter:           LCR; RIO GRANDE

Clerk:                    E. Romero

Transcribed By:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

1   **Albuquerque, New Mexico; Tuesday, January 8, 2019; 9:37 a.m.**

2   **(Call to Order)**

3   **THE COURT:** For arraignment and detention hearing,
4   United States of America versus Robert Dunsworth, and that's in
5   18-cr-3475-WJ.

6   **MR. SPINDLE:** Joe Spindle on behalf of the United
7   States.

8   **MS. RIVAS:** Good afternoon, your Honor.  Irma Rivas
9   on behalf of Mr. Dunsworth who's present and in custody this
10  morning.

11  **THE COURT:** All right.  And are we going to be
12  proceeding -- well, let's see -- on the arraignment, let me
13  just check.

14  Mr. Dunsworth, did you receive a copy of the
15  indictment?

16  **THE DEFENDANT:** Yes, ma'am.

17  **THE COURT:** Have you had a chance to review it?

18  **THE DEFENDANT:** Yes.

19  **THE COURT:** And you understand those allegations?

20  **THE DEFENDANT:** Yes, your Honor.

21  **THE COURT:** And the charge against you?

22  **THE DEFENDANT:** Yes, ma'am.

23  **THE COURT:** And have you also discussed with
24  Ms. Rivas, the maximum penalties that you face?

25  **THE DEFENDANT:** Yes, I have.

1   **THE COURT:** And I believe there was a possibility
2   that he could be considered an armed-career criminal.  And
3   yesterday Mr. Spindle did advise him of those penalties as
4   well.
5       Do you recall that, Mr. Dunsworth?
6   **THE DEFENDANT:** No.
7   **THE COURT:** Okay.  Mr. Spindle, would you again
8   review those possible penalties?
9   **MR. SPINDLE:** Yes, your Honor.  If it's determined
10  that the defendant is an armed-career criminal, the maximum
11  penalties could be up to life in prison with a minimum of 15
12  years in prison and up to five years of supervised release; a
13  $250,00 fine, as well as a hundred dollar special penalty
14  assessment.
15  **THE COURT:** Do you understand that, Mr. Dunsworth?
16  **THE DEFENDANT:** I don't understand it.
17  **THE COURT:** All right.  Under certain circumstances
18  with a criminal history that's significant, you might qualify
19  as an armed-career criminal.  If that's the case, the penalty
20  goes up significantly.  If, on the charge of felon in
21  possession of a firearm and ammunition --
22  **THE DEFENDANT:** But I'm not even a criminal, much
23  less a career criminal.
24  **THE COURT:** All right.  I'm going to let you talk to
25  Ms. Rivas because she's here to advise you.

1          **THE DEFENDANT:**  Okay.

2          **THE COURT:**  And I want to make sure you don't say

3  something that could hurt you later.

4          **THE DEFENDANT:**  Okay.

5          **THE COURT:**  All right.  Ms. Rivas, do you feel

6  confident that Mr. Dunsworth understands the maximum penalties?

7          **MS. RIVAS:**  Yes, your Honor.

8          **THE COURT:**  All right.  And are you satisfied with

9  Ms. Rivas' advice and representation?

10         **THE DEFENDANT:**  Yes.

11         **THE COURT:**  Willing to waive a formal reading of the

12 indictment?

13         **MS. RIVAS:**  Yes, your Honor.  We'd ask the court to

14 enter a guilty plea on his behalf.

15         **THE COURT:**  All right.  A not guilty plea will be

16 entered on behalf of Mr. Dunsworth on a single-count

17 indictment.

18         Counsel, I'll enter the standing discovery order

19 electronically.  Your motions are due January 28th and you'll

20 be notified by Chief Judge Johnson's chambers of a trial date.

21         With regard to the issue of detention, the Pretrial

22 Services has recommended that he remain in custody.

23         Anything you'd like to say, Ms. Rivas?

24         **MS. RIVAS:**  Yes, your Honor.

25         Your Honor, first I'd like to ask the court to

1  consider -- I'd ask the court to consider his release to the La
2  Posada Halfway House.  One of the big reasons that I ask that
3  is that Mr. Dunsworth, while in the custody of the Metropolitan
4  Detention Center, had been receiving methadone treatment.
5          **THE COURT:**  Right.
6          **MS. RIVAS:**  And so he's suffering -- even this
7  morning, he's beginning to suffer the symptoms of withdrawal of
8  that.  He's been on the methadone program now for over three
9  months, so I think that that would assure that he would stay
10 clean.
11         He's -- he was about to begin a counseling program.
12 And given that the court may be concerned about him not having
13 a stable place to live, I think that the halfway house would
14 assure that stability for him.  But mainly our main issue and
15 concern for him and his health is he is suffering from
16 methadone withdrawal.  He's gone through it before.  I asked
17 him before what had happened.  He said that the last time it
18 took him about a month to get that out of his system.  He's
19 beginning to have the beginning stages now.  He feels body
20 aches.  And I asked him, I said, compared to a flu?  He said
21 it's much worse right now as he's standing before the court.
22 He's got watery eyes, a runny nose and he says he feels cold
23 and hot simultaneously.
24         We'd ask that the court also consider that his
25 violent crimes are from 2000 so that's (glitch in audio) and

1  that since that time he hasn't had any violent crimes.  So for
2  those reasons, your Honor, we ask that the court consider
3  allowing his release to the halfway house.  It gives him a safe
4  place to live.  It helps him with his health so that he can
5  hopefully begin a methadone program right away and he can begin
6  with counseling.
7         **THE COURT:**  I'm not sure if the La Posada -- does it
8  allow individuals to be on the methadone program?
9         **PROBATION:**  They do, your Honor.
10         **THE COURT:**  Okay.
11         **PROBATION:**  He will -- he wouldn't be able to go
12  right away, though.  It would -- they have their own process
13  when someone enters the facility but once he has a valid
14  prescription and he has to go to the clinic, he would be able
15  to do that.
16         **THE COURT:**  All right.
17         **MS. RIVAS:**  May I --
18         **THE COURT:**  Yeah.
19         **MS. RIVAS:**  I apologize.  One more thing that I
20  forgot to mention.
21         Looking at the criminal complaint in state court, the
22  gun in this case was obtained without a warrant so we don't
23  know yet now but considering the weight of the evidence, there
24  may be a motion to suppress here.  I don't know yet but.
25         **THE COURT:**  All right.  Mr. Spindle?

1 **MR. SPINDLE:** Your Honor, the United States concurs
2 with Probation that there are no combination of conditions or
3 conditions that would ensure community safety as well as
4 Defendant's appearance in court. Under 3142 factors, Defendant
5 is both a flight risk and he is a community safety risk. Under
6 the nature and circumstances, Defendant had two incidents in
7 this set of facts within a week of each other in which he
8 possessed two different guns. During the first incident he
9 confessed to law enforcement that it was his firearm, and he
10 used his brother's identification in the entire first time to
11 where he tried to throw off apprehension and prosecution. It
12 wasn't until later they determined that his deceased brother's
13 identity was what he was using. And then he was released on
14 that State warrant and within a week he was back out on the
15 streets possessing another firearm.
16 Furthermore, regarding the flight risk, the defendant
17 resides in a mobile home, according to the facts in this case.
18 And he told Probation that he moves often. So he lives a
19 pseudo transient lifestyle.
20 Under the defendant's criminal history, we do believe
21 he is an armed career criminal so he's facing significant
22 imprisonment there, 15 years up to life imprisonment, and it's
23 for three violent felonies that occurred throughout the '90s
24 and into the 2000s. We have the res burglary, the armed
25 robbery in the 90s, as well as aggravated assault with a deadly

1  weapon in 2000.  That indicates that he has the incentive with
2  this mandatory imprisonment to try to avoid apprehension or
3  prosecution in this matter.
4           Furthermore, as I'm sure the court's aware from
5  reviewing his Pretrial Services' Report, he has just an
6  abhorrent criminal history.  I reviewed it briefly and I saw at
7  least 14 times when he had either probation violations or
8  failures to appear.  Fourteen separate times a court gave him
9  instructions to do something and he disregarded those to the
10 court in that situation.  That shows what a flight risk he is.
11          Regarding the strength of the evidence, admittedly
12 the defense is looking into a warrant issue, whether or not the
13 search and seizure was proper in this case.  It's the United
14 States' position, obviously, that it was but we do have an
15 admission from the defendant to law enforcement and we have law
16 enforcement locating and finding the firearm.  We're not
17 relying on civilian witnesses to establish this; we're relying
18 on professional witnesses.
19          But I think the thing that's the most concerning to
20 the United States is just the level of threat that the
21 defendant poses to the general public.  He has this incredibly
22 violent history.  He has this untreated addiction problem, and
23 he has these firearms that even after being arrested, he goes
24 back to possessing (indisc.).  It just shows that nothing that
25 the judicial system does is going to dissuade him from doing

1  what he thinks he's entitled to do.  I'm sympathetic with his
2  addiction issues and with his current predicament regarding his
3  illness but it's the job of the federal government to provide
4  medication in this situation and obviously the United States
5  would not object to any sort of instruction from the court
6  regarding treatment of his current illness.
7          **THE COURT:**  Yeah, I agree with both Pretrial Services
8  and Mr. Spindle for all the reasons he's identified and those
9  that are set forth in the Pretrial Services Report.  I find the
10 government has shown him to be a flight risk by a preponderance
11 of the evidence and a danger to the community by clear and
12 convincing evidence and that there are no combination of
13 conditions for his release that would adequately address those
14 concerns.
15         Mr. Dunsworth, you will remain in custody until the
16 time of your trial.  I, too, am sympathetic to his situation.
17 I'd just ask the marshals to make sure that the medical staff
18 are aware of your predicament.
19         **THE DEFENDANT:**  They're not giving me nothing.
20         **THE COURT:**  That's the best I can do for you,
21 Mr. Dunsworth.
22         Anything else, Ms. Rivas?
23         **THE DEFENDANT:**  I'm not a flight risk.  I've been 20
24 years not one.  He's talking about old, old stuff.
25         **THE COURT:**  Well, you can talk to Ms. Rivas more

1  about this.

2         Anything else, Ms. Rivas?

3         **MS. RIVAS:**  No, your Honor, thank you.

4         **THE COURT:**  All right.  Thank you.

5    **(Proceeding adjourned at 9:46 a.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    January 25, 2019
         Signed                                        Dated

*TONI HUDSON, TRANSCRIBER*