IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                      No. 18 CR 3475 WJ

ROBERT DUNSWORTH,

    Defendant.

**MOTION FOR SUPPRESSION OF EVIDENCE**

Robert Dunsworth, Defendant, by and through his undersigned appointed counsel, Irma Rivas, Assistant Federal Public Defender, moves the Court for suppression of evidence as set forth below, and in support of his motion would respectfully show the Court as follows:

**Procedural History**

Mr. Dunsworth was arrested on January 7, 2019.  He is charged by grand jury indictment [Doc. 2] filed October 23, 2018 with being a Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. 922(g).  The date of the alleged offense is June 25, 2018.  Mr. Dunsworth appeared at arraignment on January 8, 2019 and entered a not guilty plea to the single count in the indictment.

Mr. Dunsworth remains in custody pursuant to the court's detention order entered on January 8, 2019. [Doc. 12].  Defense counsel moved to appeal the detention order and a hearing was held on April 10, 2019.  The Court, Chief Judge William P. Johnson, denied

defendant's motion to appeal the detention order, per order filed April 11, 2019. [Doc. 26]. Discovery was received by the undersigned counsel on January 10, 2019 and on March 11, 2019.

On October 22, 2019, Chief Judge William P. Johnson ordered a pre-plea, Form 13, presentence report. (Doc. 36)

## Factual Background

At about 7:30 a.m. on a cool June morning in 2018, three (3) Albuquerque police officers, uniformed and armed, approach Mr. Dunsworth's mobile home. Those Officers were Albuquerque Police Officers Foster, Chavez and Montoya. Officer Foster approached and knocked on Mr. Dunsworth's door. Then the officer knocked again. Then Officer Montoya knocked on the door, and without waiting for a response, opened two doors. Officer Montoya opened both the exterior solid door, and then opened the interior mesh door. Both doors were opened as wide as possible. The doors were not cracked open. Officer Montoya ordered Mr. Dunsworth out of the trailer.

Although the solid outside door was not latched closed, it was closed and officers could not have seen Mr. Dunsworth upon their approach. Officer Montoya did not ask Mr. Dunsworth for permission to open the door. Mr. Dunsworth was in bed at the time the officers did open his doors. Mr. Dunsworth did not come to the door. Officer Montoya ordered Mr. Dunsworth to "step out sir."[1]

---

[1] Officer Foster Lapel Video at 3:28

2

When the officers open the door, Mr. Dunsworth is in his bed and wearing only underwear and socks.  He asks Officer Montoya permission to put on a pair of pants.  He does not put on his pants until the officer says "yeah, sure go ahead"[2] The temperature is cool at approximately 66° to 71° F.[3]  When he exits his trailer, he is not wearing a shirt.  He asks if he can have a shirt.  Mr. Dunsworth does not ask whether an officer can grab his shirt for him.  He only ask if he can have a shirt.  Officer Montoya responds, and volunteers Officer Chavez for the task.  He tells Mr. Dunsworth that his partner, Officer Chavez, can go inside to grab the shirt for him.   Officer Chavez enters the trailer, without permission, to grab the shirt.  Mr. Dunsworth asks for boots.  Per Officer Chavez' lapel video it is clear that the boots are visible from the doorway, yet when Officer Chavez enters the trailer to recover the boots, Officer Chavez lingers.  The video shows this before Officer Chavez grabs the boots.  Outside, Officer Foster asks Mr. Dunsworth for his identifying information and discovers that he has outstanding warrants.  Officer Foster asks Mr. Dunsworth to stand, to turn around, and then places him in handcuffs.

Mr. Dunsworth verbally expresses his concern and questions the officers about why there need to be three officers there speaking to him.  Officer Chavez tells him that 'they' send two cars to almost any call and that there happened to be two officers in one car on June 25, 2018.  Mr. Dunsworth is concerned about what will happen to his trailer.  His wife is not there to take it.  Officer Foster asks him for his wife's number.  Mr.

---

[2] APD Officer Foster Lapel Video at 10:53
[3]<https://www.timeanddate.com/weather/usa/albuquerque/historic?month=6&year=2018> viewed October 2, 2019.

Dunsworth says her phone number is in his phone in the trailer. Officer Chavez enters the trailer to look for it and does not find it. As Mr. Dunsworth is being handcuffed, Officer Chavez again asks where he can find it? He asks if it is in the nightstand? Mr. Dunsworth says yes. Although Officer Chavez does initially look in the drawers of the nightstand, he then continues to look in other parts of the trailer where Mr. Dunsworth did not give him permission to search. Officer Chavez then asks several questions of him in a row: Is it in a nightstand? Is it next to …… (does not specify)what color is the phone, is it a smart phone, a flip phone, would be in a back pack or anything? Would it be on the floor? She wouldn't have the phone? She has her own phone? You each have a phone?

      Officer Chavez never asks if it would be on the bed, near the bed, under the covers, or in a jacket. Officer Chavez' own report does describe the answer that Mr. Dunsworth provided to him. Officer Chavez enters the trailer and searches for the phone in any area. He opens the drawer of a nightstand. He flips bed sheets. He moves around a denim jacket. He unfolds the jacket and observes weapon inside. Officer Chavez then quickly recovers, what is a readily visible and probably tactilely evident, from the front right hand pocket the cell phone.

      During Mr. Dunsworth's interaction with officers, officers stand outside of his trailer. One officer stands in front of the door to the trailers, preventing Mr. Dunsworth from entering and entering his trailer or leaving. The other two officers are also there and willing and able to keep Mr. Dunsworth from walking away or entering his trailer. As

did happen, since Mr. Dunsworth needed and requested items from his trailer, but was not allowed to enter to retrieve them. .

The search of Mr. Dunsworth's trailer and jacket resulted in the discovery of a firearm and ammunition.

## Argument and Authorities

**A.     Robert Dunsworth was illegally seized and searched by Albuquerque Police Officers at the time of his arrest.**

The Fourth Amendment protects the "right of the people to be secure in their persons...and effects, against unreasonable searches and seizures…" U.S. Const. amend. IV  These rights "shall not be violated." *Id.*  The default Fourth Amendment position is that no search or seizure should occur until a warrant has been issued based on probable cause. *Illinois v. Gates,* 462 U.S. 213, 238 (1938).  A search outside of this judicial process is per se unreasonable under the Fourth Amendment. *Katz v. U.S.*, 389 U.S. 347 (1967).  Albuquerque police officers seized and searched Mr. Dunsworth without a warrant.  Albuquerque police officers opened Mr. Dunsworth's exterior and interior door without probable cause that a crime had been committed.  The officers acted without a warrant and without probable cause continued to enter the trailer to search it.  Officers also unlawfully seized him by asking Mr. Dunsworth to step outside, without probable cause.  The search and seizure of Mr. Dunsworth is presumed unreasonable.

**B.     Mr. Dunsworth's rights were violated by a Government Actor.**

The Fourth Amendment protects against "searches" and "seizures by the United States government. U.S. Const. amend IV.  Officer Foster, Montoya and Chavez are

5

Albuquerque Police Officers. Because they are law enforcement officers, their job is to enforce the laws of the government. They are therefore government actors.

### C. Mr. Dunsworth had an Expectation of Privacy in the items seized and searched.

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States,* 533 U.S. 27, 33 (2001) A defendant's standing to challenge a search under the Fourth Amendment turns on whether "the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable." *United States v. Eckart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (internal quotation marks omitted). Were only the screen door closed, Mr. Dunsworth would still have a reasonable expectation of privacy inside the trailer. Further:

> Where the solid door is wide open, the screen door is what protects the privacy of the people inside—not just their visual privacy, which it protects only partially, but also their privacy from undesired intrusion. Where the solid door is open so that the screen door is all that protects the privacy of the residents, opening the screen door infringes upon a reasonable and legitimate expectation of privacy.

*United States v. Arellano-Ochoa*, 461 F.3d 1142 (9th Cir. 2006)

Mr. Dunsworth clearly had a reasonable expectation of privacy in his person and in the contents of his trailer. He would have such expectation if only the screen door was closed. However, in this case, both doors were closed. Further, Mr. Dunsworth was only partially dressed and asleep in in his bed in his trailer, such that his privacy was visually protected and such expectation is reasonable.

**D.      Further, any alleged consent was not freely and voluntarily given and was therefore coerced.**

When reviewing an encounter for Fourth Amendment purposes, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter." *Florida v. Bostick,* 501-U.S. 429, 435-437 (1991). " '…when a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was in fact, freely and voluntarily given.'" *Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973).  (citing Bumper v. North Carolina, 391 U.S. 543-548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d. 797, citations omitted).  The encounter is unconstitutional if, when 'taking into account all of the circumstances surrounding the encounter, the police conduct would have been communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick* at 437.

A person is seized when officers, looking at the totality of the circumstances, act in a way that leads a reasonable person to believe that they are not free to leave.

> We have said before that the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.
> Florida v. Bostick, 501 U.S. 429, 437, 111 S. Ct. 2382, 2387, 115 L. Ed. 2d 389 (1991)

The voluntary nature of consent is a question of fact, and the court considers the totality of the circumstances in making this determination. *United States v. Dozal,* 173 F.3d 787, 795 (10th Cir. 1999).  Relevant factors to consider in a totality of the

7

circumstances analysis are as follows: (1) the threatening presence of several officers; (2) the brandishing of a weapon by an officer; (3) physical touching by an officer; (4) aggressive language or tone of voice by an officer indicating compliance is compulsory; (5) prolonged retention of individual's personal effects; (6) a request to accompany an officer to the police station; (7) interaction in a small, enclosed or non-public place and (8) absence of other members of the public. *U.S. v. Jones,* 701 F.3d 1300 (2012)(citing *U.S. v. Rogers*, 556 F.3d 1130, 1137-1138 (10th Cir. 2006).

    Here, any consent was coerced. First, three officers surrounded Mr. Dunsworth. Mr. Dunsworth was asleep and undressed in his trailer with both the solid and mesh doors closed. Officers opened the door and ordered him to step outside of the trailer. Second, Mr. Dunsworth felt intimidated by the three officers. He further asked why there needed to be three officers present to speak to him. Although, the officers did not brandish a weapon. All three officers stood outside of Mr. Dunsworth's trailer in a way that limited his movement. All three officers were uniformed and visibly armed. He could not leave nor could he reenter his trailer because all three offers stood around him. He was not free to enter his trailer because when he asked for more clothing the officers did not simply allow him to enter and retrieve his personal items. One of these officers further placed him in handcuffs. Third, Officer Foster did touch Mr. Dunsworth by placing him in handcuffs. Fourth, the officers opened the door to his home, approached Mr. Dunsworth and ordered him to step outside. Once outside the officers directed Mr. Dunsworth's movements by telling him where to stand, by asking him for his identifying information and then by placing him in handcuffs. Mr. Dunsworth had no choice but to abide by the

commands of the three officers at his trailer the morning of June 24, 2018.  In fact, before he steps out, he asks whether he can put on his pants.  He does not put them on until the officers allow it.  Fifth, he was immediately upon approach taken away from his personal property and asked to step outside.  The most basic of needs, a shirt, his wife's phone number, his trailer were all controlled by the three police officers there that day.   Further, officers took his wallet upon arrest and before asking Mr. Dunsworth about his cell phone.  Mr. Dunsworth could not leave or walk away from the officers, or to fail to follow their commands.  Sixth, although Mr. Dunsworth was not immediately asked to go with the officers to a police station, he was asked immediately to step outside of his trailer.

The government bears the burden of proof and "must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific and that it was freely and intelligently given." *United States v. Soto*, 988 F.2d 1548, 1557 (10th cir. 1993).  "Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact." *United States v. Freeman*, 635 F.Supp.2d 1205, 1208 (2009) (citing *United States v. Page,* 302 F.2d 81, 83–84 (9th Cir.1962)   "Where there is coercion there cannot be consent." *Id.* at 1213 *(*citing *Bumper v. North Carolina,* 391 U.S. 543 (1968)  The government cannot show that Mr. Dunsworth's alleged consent was given without duress or coercion.  Therefore, any alleged consent given by Mr. Dunsworth given under duress and coercion and was not voluntary.

9

**E.     Any alleged consent was coerced and given under duress, and officers acted outside of the narrow scope of the coerced consent.**

Officer Chavez acted outside of the parameters of that coerced consent. Officer Chavez asked Mr. Dunsworth if the phone might be in the nightstand, or next to…..(did not specify), or on the floor. When Officer Chavez asked for places where Mr. Dunsworth's phone could be found, not permission, Mr. Dunsworth was under arrest. His personal items, including his wallet were taken from him. Mr. Dunsworth was in handcuffs with three officers standing around him.

Officer Chavez did not ask if he could look on Mr. Dunsworth's bed, or under his covers, or inside of his jacket. Officer Chavez did not ask Mr. Dunsworth if he could look everywhere in the trailer for Mr. Dunsworth's cell phone. He did not seek permission to search all places where a phone may be found, as with a search warrant or probable cause. Officer Chavez specifically only asked permission to search the nightstand next to…….(he does not specify), and on the floor. Officer Chavez searched under blankets and inside a jacket. Places in which he did not request permission to search.

**F.  This illegally obtained evidence must be excluded.**

"The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search…" *Murray v. United States*, 487 U.S. 533, 536 (1988) (citing *Weeks v. United States*, 232 U.S. 383 (1914). It also prohibits officers from testifying as to knowledge acquired during an unlawful search *Id.*(citing *Silverman v.*

*United States*, 365 U.S. 505(1961)). "Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search…" *Id.* Such derivative or indirectly acquired evidence is often referred to as the "fruit of the poisonous tree." *Wong Sun. United States*, 371 U.S. 471, 484 (1963)(internal quotations marks omitted).

For these reasons, Officers' seizure and search of Mr. Dunsworth without a warrant, without probable cause, and without reasonable suspicion is unconstitutional. The evidence obtained therefore must be suppressed. All other evidence that resulted from this arrest constitute the fruit of a poisoned tree, and likewise must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920).

The position of the government was not sought. Given the nature of the motion, opposition is presumed.

Mr. Dunsworth requests an evidentiary hearing on this motion. In connection with the requested evidentiary hearing, the Defendant further requests, pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, that the Government disclose to defense counsel at least forty-eight hours prior to the hearing, any statements, including grand jury testimony, of suppression hearing witnesses. This request is made in order to avoid delays in conducting the hearing. Defendant expressly requests leave to raise any other motions based on the facts and evidence that may arise during any evidentiary hearings in

this case, and to file a supplemental brief more fully addressing the testimony given at the hearing and the applicable law.

**WHEREFORE**, for the foregoing reasons, ROBERT DUNSWORTH, Defendant, by and through the undersigned counsel, respectfully prays that the Court enter an order suppressing all evidence seized as a result of the search of Mr. Dunsworth and all evidence obtained as a consequence of that illegal seizure and search, including any inculpatory statements made by Mr. Dunsworth; and providing for such other and further relief to which the Court may find Mr. Dunsworth to be justly entitled.

| | |
|---|---|
| I HEREBY CERTIFY THAT on the 2nd Day of December, 2019, I filed the foregoing electronically through the CM/ECF system, which caused AUSA Thomas Outler to be served by electronic means, as more fully reflected on the Notice of Electronic Filing. | Respectfully submitted,<br><br>FEDERAL PUBLIC DEFENDER<br>111 Lomas NW, Suite 501<br>Albuquerque, NM 87102<br>(505) 346-2489<br><br> /s/  *filed electronically*      .<br>IRMA RIVAS, AFPD<br>Attorney for Defendant |
|       *filed electronically* | |