# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

   v.                                                                                                    No. 1:18-cr-3475-WJ

ROBERT DUNSWORTH,

      Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE

**THIS MATTER** is before the Court on the Motion for Suppression of Evidence [Doc. 39], filed December 2, 2019 by Defendant Robert Dunsworth ("Defendant"). The Court held an evidentiary hearing on Defendant's motion on March 10, 2020, where it heard testimony from Albuquerque Police Department Officers John Montoya, Charles Chavez, and Zakkery Foster. Doc. 57. Defendant alleges he was illegally searched and, as a result, requests the Court suppress the evidence obtained from the search. The United States argues the Court does not need to make a finding as to whether Defendant was illegally searched because the inevitable discovery doctrine applies. "Under [the inevitable discovery doctrine], illegally obtained evidence may be admitted if it 'ultimately or inevitably would have been discovered by lawful means.'" *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). "The government bears the burden of proving by a preponderance of the evidence that the evidence would have been discovered without the Fourth Amendment violation." *Id.* (citing *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005)).

On June 25, 2018, Officers Montoya, Chavez, and Foster responded to a call regarding a

camper trailer hitched to a sports utility vehicle and a motorcycle all parked illegally near 615 Virginia Street SE in Albuquerque. The caller told the dispatcher that the camper had been parked at that location for at least three days and that the motorcycle was blocking the sidewalk. As the officers approached, they ran the plates for the camper and motorcycle. Both came back registered to Daniel Dunsworth. They also ran a criminal records check, which showed that Daniel Dunsworth had open misdemeanor arrest warrants for failure to appear in court.

The door to the camper was ajar, although not enough to see inside. The officers knocked and announced their presence a few times. There was no response. Officer Montoya then opened the door and saw Defendant lying on a bed next to the door. Officer Montoya did not enter the camper. Officer Montoya, however, asked Defendant if he could step outside so they could speak with him. Defendant said yes, put his jeans on, and exited the camper. When asked to identify himself, Defendant said he was Daniel Dunsworth. It was not until after the officers arrested him and seized his handgun later that day that they discovered that Defendant was using the name of his deceased brother, Daniel Dunsworth. During the time period relevant to this motion, the officers were operating under the assumption that Defendant's name was Daniel Dunsworth because that is the name he used to identify himself. As a result, the officers did not know Defendant had a prior felony conviction until they discovered he was not Daniel Dunsworth after his arrest.

As they talked, the officers told Defendant they had to arrest him because of the open arrest warrants. They asked Defendant if there was someone who could move his vehicles so they would not have to be towed since they were illegally parked. Defendant suggested they could call his wife; however, he could not remember her cell phone number. Defendant told the officers that his wife's number was in his cell phone directory and that his cell phone was inside the camper. Officer Montoya then asked Defendant if they could go inside to retrieve the phone. Defendant said

yes. Officer Chavez then stepped into the camper to look for the phone. After getting clarification from the Defendant that his phone was near the bed, Officer Chavez found Defendant's phone in the pocket of a jacket that was laying on the bed. When Officer Chavez picked up the jacket to retrieve the phone, he saw a handgun underneath it in plain view. Officer Chavez did not seize the handgun at that point because it had no evidentiary value, considering the officers did not know Defendant had a felony conviction. The officers, however, seized it for safe keeping before leaving the scene. It was not until later that the officers realized Defendant had a felony conviction and that he was a felon in possession of a firearm.

Defendant argues it was unlawful for the officers to open the camper's door because they did not have probable cause or a warrant, the consent Defendant gave the officers to look for his phone was coerced, and Officer Chavez saw the handgun while searching outside of the scope of the coerced consent. Doc. 39 at 5–10. After reviewing the evidence, to include the officers' lapel camera videos, the Court has no trouble finding that the consent Defendant gave the officers to retrieve his phone from the camper was not coerced and that Officer Chavez discovered the handgun in plain view while searching within the scope of Defendant's consent. Although the United States relies on the inevitable discovery doctrine, the Court considers the initial action of Officer Montoya opening the door of the camper to be lawful because such action was likely done as the first step of the inventory search in preparation for towing and impounding the camper, SUV, and motorcycle. *See United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997) ("An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment . . . designed to effect three purposes: protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger."). The Court also questions the extent to which Defendant can claim a reasonable expectation of privacy in a

camper that he was not the registered owner of and that was illegally parked for more than three days on the side of a street within Albuquerque city limits.

Ultimately, the Court agrees with the United States that no finding is required on the question of whether Defendant was illegally searched because the inevitable discovery doctrine applies. The officers, when responding to the call, had information that the camper had been illegally parked for at least three days on a public road and that the motorcycle, parked just outside the door of the camper, was blocking a sidewalk. Officer Montoya testified that, when approaching the camper and motorcycle, "it looked like somebody had already set up camp" and "it is illegal to be living out of an RV on the street." It is in fact illegal to "park a vehicle on any street for the principal purpose of . . . [l]iving within the vehicle." Albuquerque City Ordinance § 8-5-1-36. The camper, SUV, and motorcycle were also in violation of several other Albuquerque City Ordinances. *See* Doc. 47-5 at 1–9. The officers testified that had they not found Defendant by opening the camper's door, they would have impounded the camper and would have found Defendant's handgun during the required inventory search. The Court finds the officers' testimony credible and agrees that the handgun would have been discovered when conducting an inventory search of the camper. *See United States v. Martinez*, 512 F.3d 1268, 1274 (10th Cir. 2008) ("To prove the seized evidence would have been inevitably discovered, the government can rely on a hypothetical inventory search.").

The Supreme Court has explained that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they

would have been in absent any error or violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984). The handgun has an independent source, so suppressing it would put the police in a worse position than they would have been absent the officers' alleged unlawful opening of the camper's door.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Suppression of Evidence [Doc. 39] is **DENIED**.

_____
**WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE**